<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **FRUIT FLOWERS, LLC,** | |
| Plaintiff, | |
| v. | Civil Action No. 14-5834 (ES) |
| **JAMMALA, LLC and MUNTHER DARAMNEH,** | **OPINION & ORDER** |
| Defendants. | |

**SALAS, DISTRICT JUDGE**

Before the Court is Plaintiff Fruit Flowers, LLC's ("Fruit Flowers" or "Plaintiff") motion for default judgment against Defendants Jammala, LLC. ("Jammala") and Munther Daramneh ("Daramneh") (collectively, "Defendants") pursuant to Federal Rule of Civil Procedure 55(b). The motion is unopposed. For the reasons below, the Court grants Plaintiff's motion for default judgment.

**I.     FACTS**

On September 19, 2014, Fruit Flowers commenced this civil action under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, seeking to enjoin Defendants from using Fruit Flowers' registered trademarks. (D.E. No. 1, Complaint ("Compl.")).

Fruit Flowers is in the business of selling sculpted fruit arrangements. (Compl. ¶ 8). As part of its business, Fruit Flowers registered trademarks in connection with its fruit product designs

and other sculpted fruit products, including the U.S. Registration trademarks that are the subject of this action (the "Fruit Flowers Marks" or the "Marks"). (*Id.* ¶ 9).

Fruit Flowers also has a franchising program that is administered by Incredible Franchise Corporation ("IFC").[1] (*Id.* ¶ 10). IFC is permitted to sublicense the Fruit Flower Marks to franchisees. (*Id.*). IFC and Jammala entered into a Franchise Agreement on November 16, 2007 (the "Franchise Agreement"). (*Id.* ¶ 14). Daramneh, as President of Jammala, signed the Franchise Agreement on Jammala's behalf. (*Id.*).

Fruit Flowers alleges that the Franchise Agreement permitted Jammala to use the Fruit Flowers Marks in its Fruit Flowers store located in Waldwick, New Jersey. (*Id.*). It further alleges that the Franchise Agreement required Jammala to pay royalties to Fruit Flowers for its use of the Marks. (*Id.* ¶ 15). According to Fruit Flowers, the Franchise Agreement contained a provision stipulating that if Jammala did not pay its owed royalties within thirty days of receiving written notice, the Franchise Agreement would be terminated. (*Id.*).

Fruit Flowers alleges that Jammala began to default on its royalty payments beginning in 2009. (*Id.*). On May 7, 2014, a Notice of Default and Termination was hand-delivered to Daramneh informing him that Fruit Flowers would terminate the Franchise Agreement after sixty days if the deficiencies were not cured. (*Id.*). Fruit Flowers asserts that neither Daramneh nor Jammala cured the deficiencies, and Fruit Flowers terminated the Franchise Agreement on July 7, 2014. (*Id.*).

Fruit Flowers alleges that termination of the Franchise Agreement required Defendants to immediately stop using "IEF intellectual property, including but not limited to the Fruit Flowers Marks." (*Id.* ¶ 16). Despite this requirement, Plaintiff alleges that Defendants continued to use

---

[1] By way of merger, IFC was succeeded by Incredible Edible Franchise, LLC ("IEF") on July 29, 2014. (Compl. ¶ 10).

and advertise the Fruit Flowers Marks not only at the New Jersey store, but also on websites such as Groupon, Yelp, and Living Social.  (*Id.* ¶¶ 17-18; *see also* D.E. No. 1, Ex.  A and B ("Online Advertising")).

By letter dated August 13, 2014, IEF demanded that Defendants cease and desist the use of the Fruit Flowers Marks.  (Compl. ¶ 20).  Plaintiff alleges that, to date, Defendants continue to use the Fruit Flowers Marks.  (*Id.*).

On September 19, 2014, Plaintiff filed the instant action, alleging trademark infringement and false designation of origin or sponsorship under the Lanham Act, 15 U.S.C. §§ 1114(1)(a), 1125(a).  (*Id.* ¶¶ 21-32).  Plaintiff seeks an injunction enjoining Defendants' unauthorized use of the Fruit Flowers Marks, as well as an award of costs and disbursements, including reasonable attorneys' fees.  (*Id.* ¶ 32).

On October 23, 2014, Daramneh was served with a copy of the Summons and Complaint at his residence, and he accepted service on behalf of himself and Jammala.  (D.E. Nos. 5-6).  On December 9, 2014, the Clerk of the Court entered default against Defendants pursuant to Federal Rule of Civil Procedure 55(a) for failure to appear, plead or otherwise defend in this case.  (D.E. dated 12/9/2014).  Thereafter, on January 30, 2015, Plaintiff filed the instant motion seeking default judgment.  (D.E. No. 8).

## II.   LEGAL STANDARD

"Before granting a default judgment, the Court must determine (1) whether there is sufficient proof of service, (2) whether a sufficient cause of action was stated, and (3) whether default judgment is proper."  *Teamsters Health & Welfare Fund of Phila. & Vicinity v. Dubin Paper Co.*, No. 11-7137, 2012 WL 3018062, at *2 (D.N.J. July 24, 2012) (internal citations omitted).  A party seeking default judgment is not entitled to relief as a matter of right; the Court

3

may enter default judgment "only if the plaintiff's factual allegations establish the right to the requested relief." *Ramada Worldwide Inc. v. Courtney Hotels USA, L.L.C.*, No. 11-896, 2012 WL 924385, at *3 (D.N.J. Mar. 19, 2012) (quoting *Nautilus Ins. Co. v. Triple C. Const. Inc.*, No. 10-2164, 2011 WL 42889, at *4 (D.N.J. Jan. 6, 2011) (internal quotation marks omitted)).

To determine whether granting default judgment is proper, the Court must consider the following three factors: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000). A meritorious defense is one that "if established at trial, would completely bar plaintiff's recovery." *Momah v. Albert Einstein Med. Ctr.*, 161 F.R.D. 304, 307 (E.D. Pa. 1995) (quoting *Foy v. Dicks*, 146 F.R.D. 113, 116 (E.D. Pa. 1993)). Furthermore, a defendant's culpable conduct in allowing default is a relevant consideration for a district court. *Farnese v. Bagnasco*, 687 F.2d 761, 764 (3d Cir. 1982).

## III. JURISDICTION

Before entering a default judgment as to a party "that has not filed responsive pleadings, 'the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties.'" *Ramada Worldwide, Inc. v. Benton Harbor Hari Ohm, LLC*, No. 05–3452, 2008 WL 2967067, at *9 (D.N.J. July 31, 2008) (citation omitted).

### A. Subject Matter Jurisdiction

"The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The Lanham Act is a federal trademark statute that prohibits trademark infringement and false advertisement. 15 U.S.C. §§ 1114(1)(a), 1125(a); *see also A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000). Plaintiff alleges that the Defendants' continued use of the Fruit Flowers

4

Marks constitutes trademark infringement under 15 U.S.C. § 1114(1)(a) and false designation of origin or sponsorship[2] under 15 U.S.C. § 1125(a).  (Compl. ¶¶ 21-32).  Because trademark infringement and false designation of origin or sponsorship are violations of the Lanham Act, the Court has subject matter jurisdiction over Fruit Flowers' claims.

### B.  Personal Jurisdiction

Fruit Flowers has "the burden of proving personal jurisdiction, [but it] can satisfy that burden with a prima facie showing."  *HICA Educ. Loan Corp. v. Morse*, No. 12-2785, 2012 WL 3757051, at *2 (D.N.J. Aug. 28, 2012) (citation omitted).  Fruit Flowers alleges that Defendants are residents of New Jersey, and that Defendants were served in the State of New Jersey on October 23, 2014.  (Compl. ¶¶ 3-4; D.E. Nos. 5-6 ("Certificates of Service")).  Accordingly, this Court has personal jurisdiction over Defendants.

### IV.  DISCUSSION

As discussed above, in order to grant a default judgment the Court must first determine whether the Defendants were properly served.  *See Dubin*, 2012 WL 3018062, at *2.  On October 23, 2014, Daramneh was personally served with a copy of the Summons and Complaint at his residence in New Jersey.  (D.E. No. 6).  Daramneh accepted service on behalf of both himself and Jammala.  (D.E. No. 5).  Accordingly, the Court determines that proper service occurred.

Second, the Court must determine whether Plaintiff has stated a sufficient cause of action. *See Dubin*, 2012 WL 3018062, at *2.  Under the Lanham Act,

> [a]ny person who shall, without the consent of the registrant use in commerce any . . . imitation of a registered mark in connection with the sale, offering for sale . . . or advertising of any goods or services . . . in connection with which such use is likely to cause confusion,

---

[2] "[T]he Lanham Act Section 43(a) proscribes unfair competition or, as the statute refers to it, 'false designation of origin' or 'false description.'" *Howard v. Laws*, No. 13-0957, 2014 WL 3925536, at *3 (D.N.J. Aug. 12, 2014) (quoting 15 U.S.C. § 1125(a)).

>or to cause mistake or to deceive . . . shall be liable in a civil action by the registrant . . . .

15 U.S.C. § 1114(1)(a).  To prove either trademark infringement or unfair competition, a plaintiff must demonstrate that "(1) the mark is valid and legally protectable; (2) the mark is owned by the plaintiff; and (3) the defendant's use of the mark is likely to create confusion concerning the origin of the goods or services."  *Freedom Card, Inc. v. JP Morgan Chase & Co.*, 432 F.3d 463, 470 (3d Cir. 2005) (footnote omitted) (citing *A & H Sportswear*, 166 F.3d at 202).  Additionally, "to prevail on a trademark infringement claim, the plaintiff is required to show that the defendant's use of the offensive mark is unauthorized."  *Piquante Brands Int'l, Ltd. v. Chloe Food Corp.*, No. 3:08-cv-4248, 2009 WL 1687484, at *3 (D.N.J. June 16, 2009) (citing *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990)).

Here, Plaintiff has demonstrated that it is the owner of the Fruit Flowers Marks, and that these marks are valid and legally protectable.  (*See* D.E. No. 3, USPTO Patent/Trademark Form); *E.A. Sween Co. v. Deli Express of Tenafly, LLC.*, 19 F. Supp. 3d 560, 568 (D.N.J. 2014) ("A 'certificate of registration issued by the United States Patent and Trademark Office constitutes prima facie evidence of the validity and ownership of a disputed mark' and is therefore sufficient to establish the first and second elements of trademark infringement and unfair competition claims." (quoting *Coach, Inc. v. Cosmetic House*, No. 10-2794, 2011 WL 1211390, at *2 (D.N.J. Mar. 29, 2011))).  Moreover, Plaintiff avers that Defendants have not been granted any rights to continue their use of the Fruit Flowers Marks.  (Compl. ¶ 20).  Indeed, the Franchise Agreement between the parties was formally terminated on July 7, 2014.  (*Id.* ¶ 15).  Therefore, it is apparent that Defendants' continued use of the trademark is unauthorized and violates the Lanham Act.  *See Days Inn Worldwide, Inc. v. Mayu & Roshan, L.L.C.*, No. 06-cv-1581, 2007 WL 1674485, at *3 (D.N.J. June 8, 2007) (finding that where the defendant continued to use the mark after the plaintiff

6

terminated the License Agreement, the defendant violated section 32 of the Lanham Act). The Court is satisfied that the first two elements are met, and that Defendants do not have permission to use the Fruit Flowers Marks. This Court now turns to whether Defendants' use of the Fruit Flowers Marks, as alleged in Plaintiff's Complaint, gives rise to a likelihood of confusion.

A likelihood of confusion arises when "consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *Dranoff-Perlstein Assocs. v. Sklar*, 967 F.2d 852, 862 (3d Cir. 1992) (quoting *Ford Motor Co., v. Summit Motor Prods., Inc.*, 930 F.2d 277 292 (3d Cir. 1991)); *see also Lorillard Techs, Inc. v. NJ Ale House, L.C.C.*, No. 2:14-2044, 2015 WL 1197531, at *8 (D.N.J. Mar. 13, 2015). The Third Circuit has promulgated ten nonexclusive factors for courts to consider in analyzing likelihood of confusion. *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460 (3d Cir. 1983). These factors include, but are not limited to: "(1) the degree of similarity between the owner's mark and the alleged infringing mark; (2) the strength of the owner's mark; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion arising; (5) the intent of the defendant in adopting the mark; (6) the evidence of actual confusion; (7) whether the goods, though not competing, are marketed through the same channels of trade and advertised through the same media; (8) the extent to which the targets of the parties' sales efforts are the same; (9) the relationship of the goods in the minds of consumers because of the similarity of function; [and] (10) other factors suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market, or that he is likely to expand into that market." *Freedom Card, Inc.*, 432 F.3d at 471 (quoting *id.* at 463).

In setting forth this test, however, the Third Circuit "noted that, in most circumstances, a court engaging in a likelihood of confusion analysis need not go beyond the mark itself to come to its conclusion." *Piquante*, 2009 WL 1687484, at *3 (citing *Lapp*, 721 F.2d at 460). Here, the Court does not need to engage in a detailed analysis of each *Lapp* factor because Plaintiff's Complaint, as alleged and taken as true, establishes a likelihood of confusion. The Third Circuit has held that "there is a great likelihood of confusion when an infringer uses the exact trademark" as the plaintiff. *Opticians*, 920 F.2d at 195 (finding "likelihood of confusion . . . inevitable, when . . . the identical mark is used concurrently"); *see also U.S. Jaycees v. Phila. Jaycees*, 639 F.2d 134, 142 (3d Cir. 1981) (holding that "a great likelihood of confusion [exists] when an infringer uses the exact trademark"). Accordingly, there is little doubt that Plaintiff and Defendants' concurrent use is highly likely to cause consumer confusion about Jammala's affiliation with Fruit Flowers. *See S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 375 (3d Cir. 1992) (finding "no question . . . that [plaintiff and defendant] are using the same legally protectable trademark, owned by . . . [plaintiff] and that their concurrent use is highly likely to cause consumer confusion"). Thus, Fruit Flowers has shown a violation of section 43(a) of the Lanham Act. Therefore, the Court is satisfied that Plaintiff has stated a sufficient cause of action for purposes of its motion for default judgment.

Third and finally, a court must determine whether granting default judgment is proper. *See Chamberlain*, 210 F.3d at 164. To do so, the Court must address "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Id.* However, courts have noted that "these factors are more applicable to situations where the defaulting party has made an appearance, particularly where the party wishes to reopen a previously entered default." *Days Inn*, 2007 WL 1674485, at

\*3 (citation omitted). Here, because Defendants have failed to plead or otherwise defend, courts have held that they are "not in a position then to determine whether [defendants have] a meritorious defense or whether any delay is the result of culpable misconduct." *Id.* (internal quotation marks and citation omitted). In fact, Defendants' "[r]eckless disregard for repeated communications from plaintiffs and the court . . . can satisfy the culpable conduct standard." *Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 523 (3d Cir. 2006) (citation omitted).

Additionally, where, as here, there is no response to the plaintiff's motion for default judgment, courts have held that denying default would prejudice the plaintiff because there would be no recourse against the defendant. *Days Inn*, 2007 WL 1674485, at \*5; *see also Gowan v. Cont'l Airlines, Inc.*, No. 10-1858, 2012 WL 2838924, at \*2 (D.N.J. July 9, 2012) (finding plaintiff "will suffer prejudice if the Court does not enter default judgment as [p]laintiff has no other means of seeking damages for the harm caused by [d]efendant"). This reasoning is applicable here. Defendants have not answered the Complaint, nor have they availed themselves of the opportunity to defend themselves against Plaintiff's allegations. If default is not entered, no other recourse is available to Plaintiff.

Therefore, the Court concludes that default judgment is proper.

## V. REMEDIES

### A. Injunctive Relief

Plaintiff requests that the Court enter a permanent injunction against Defendants, enjoining them from any further infringement of the Fruit Flowers Marks, as well as enjoining them from further unfair competition in the sale of edible fruit arrangements. (Compl. ¶ 32). An injunction is a "usual and standard remedy" under the Lanham Act. *Lermer Germany GmbH v. Lermer Corp.*, 94 F.3d 1575, 1577 (Fed. Cir. 1996).

In general, a plaintiff seeking a permanent injunction must show: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) (citations omitted).

Courts may enter a permanent injunction against defendants in a trade infringement and unfair competition case "in the context of a default judgment where the[] [permanent injunction] requirements are met." *Howard*, 2014 WL 3925536, at *8; *see also Coach, Inc. v. Ocean Point Gifts*, No. 09-4215, 2010 WL 2521444, at *10 (D.N.J. June 14, 2010). Additionally, pursuant to 15 U.S.C. § 1116, "[c]ourts ha[ve] the authority to grant injunctive and other equitable relief to prevent . . . violations of a plaintiff's trademark rights." *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 539 (D.N.J. 2008). This Court finds that a permanent injunction is warranted here.

First, this Court finds that Plaintiff would suffer irreparable injury if Defendants were to continue to use the Fruit Flowers Marks. This Court has already determined that Plaintiff has established violations of sections 32 and 43(a) of the Lanham Act. *See supra* Section IV. It is well settled that trademark infringement may amount irreparable injury as a matter of law. *See Citizens Fin. Grp. Inc. v. Citizens Nat'l Bank of Evans City*, 383 F.3d 110, 125 (3d Cir. 2004) (determining that trademark infringement amounts to irreparable injury as a matter of law). Indeed, the Third Circuit has held that "[l]ack of control over one's mark 'creates the potential for damage to . . . reputation[, which] constitutes irreparable injury for the purpose of granting a preliminary injunction in a trademark case.'" *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 726 (3d Cir. 2004) (quoting *Opticians*, 920 F.2d at 196). According to Plaintiff, Defendants continue

to infringe the Fruit Flowers Marks by using them on website advertisements and in their New Jersey store without Fruit Flowers' consent, resulting in consumer confusion and deception. (Compl. ¶¶ 22-23, 29). This is sufficient to establish irreparable injury.

Furthermore, an injunction is warranted because monetary damages are inadequate to compensate Plaintiff's injuries of trademark infringement and unfair competition. Courts in this district have held that monetary relief is not sufficient to compensate a plaintiff for damages to reputation arising out of trademark infringement. *See, e.g.*, *Coach, Inc. v. Bags & Accessories*, No. 10-2555, 2011 WL 1882403, at *9 (D.N.J. May 17, 2011) (determining that "[w]hile a remedy at law would provide a degree of monetary relief, it will not compensate for the injury to . . . [plaintiff's] reputation or necessarily prevent future trademark infringement"). Indeed, "Plaintiff's lack of ability to control the nature and quality of services provided under an infringing . . . mark . . . constitutes irreparable injury." *Fotomat Corp. v. Photo Drive-Thru, Inc.*, 425 F.Supp. 693, 711 (D.N.J. 1977). This is precisely the case here, where Defendants' continued use of the Fruit Flowers Marks threatens Plaintiff's reputation and good will. (Compl. ¶¶ 24, 29). Accordingly, Plaintiff has established that monetary damages are inadequate to compensate its injury.

Next, in considering the balance of hardships to Plaintiff and Defendants, this Court finds that equity warrants the relief Plaintiff seeks. Defendants, in this case, will not be unduly burdened by the issuance of an injunction. In fact, the only "hardship" to Defendants is that they will be refrained from engaging in continuous unlawful conduct. *See Coach*, 2011 WL 1882403 at *9 (finding that "[t]he only hardship imposed upon the Defendants is that they obey the law"). Accordingly, the balance of the hardships warrants an equitable remedy.

Lastly, the public interest weighs in Plaintiff's favor. The Third Circuit has recognized the public interest in enforcing trademark rights. *See Bill Blass, Ltd. v. SAZ Corp.*, 751 F.2d 152,

156 (3d Cir. 1984) (determining that "there is a public interest in the protection of the trademark and to avoid confusion in the public"). Here, "[i]ssuing an injunction will serve the public interest goals of preventing consumer confusion and the trademark holder's property interest." *Coach*, 2011 WL 1882403, at *9 (citing *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 883 (S.D. Ohio 2007).

Because Plaintiff has satisfied each of the *eBay* factors, this Court will grant Plaintiff a permanent injunction. *See eBay*, 547 U.S. at 388.

### B.   Request for Written Report

Plaintiff's proposed order, (D.E. No. 8-1), also requests that Defendants be required to file a written report under oath, setting forth in detail the manner and form in which they have complied with the injunction. First, it is within the Court's sound discretion under 15 U.S.C. § 1116(a) to order a written report. *See* 15 U.S.C. § 1116(a); *see also Mount Nittany Med. Ctr. v. Nittany Urgent Care, P.C.*, 11-622, 2011 WL 5869812, at *4 (M.D. Pa. Nov. 22, 2011); *U.S. Olympic Comm. v. Tobyhanna Camp Corp.*, No. 3:10-CV-162, 2010 WL 4617429, at *4 (M.D. Pa. Nov. 4, 2010). Because Defendants have failed to respond to any of Plaintiff's allegations, an order requiring Defendants to file a written report is necessary to assure compliance with the injunction. *See Mount Nittany Med. Ctr.*, 2011 WL 5869812, at *4-5; *see also World Entm't, Inc. v Brown*, No. 09-5365, 2011 WL 2036686, at *9 (E.D. Pa. May 20, 2011) (requiring defaulting defendants to submit a report in writing under oath detailing compliance with the permanent injunction); *F.T.C. v. Chinery*, No. 05-3460, 2006 WL 3878416, at *12 (D.N.J. Dec. 26, 2006) (same); *United States v. Lane Labs-USA, Inc.*, 324 F. Supp. 2d 547, 572 (D.N.J. 2004) (same).

### C. Requests for Costs and Disbursements

Plaintiff further seeks costs and disbursements incurred in this action, including Fruit Flowers' reasonable attorneys' fees. (Compl. ¶ 32). The Lanham Act expressly permits an award of attorneys' fees to a prevailing party in "exceptional cases." 15 U.S.C. § 1117(a). "While the statute does not explicitly define the term 'exceptional,' generally a trademark case is exceptional for purposes of an award of attorneys' fees when the infringement is malicious, fraudulent, deliberate or willful." *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 585 (D.N.J. 2002) (citing *Securacomm Consulting, Inc. v. Securacomm, Inc.*, 224 F.3d 273, 280 (3d Cir. 2000)); *see also Chanel*, 558 F. Supp. 2d at 539 (concluding that defendant's "conduct constituted willful infringement, and [plaintiff] is entitled to attorney's fees"); *Urban Outfitters, Inc. v. BCBG Max Azria Grp., Inc.*, 430 F. App'x 131, 135 (3d Cir. 2011) (noting that "in light of the instances of intentional infringement . . . [defendant is ordered] to pay 50% of [plaintiff's] attorneys' fees").

The Court is satisfied that the defaulting Defendants willfully infringed Fruit Flowers' trademarks. The Franchise Agreement provides that upon termination of the Franchise Agreement, the Defendants must immediately cease from using the Fruit Flowers Marks; indeed, Defendants were reminded of this provision in the Notice of Default and Termination. (Compl. ¶ 16). Moreover, after the Franchise Agreement was terminated, Defendants continued to use the Fruit Flowers Marks in their Waldwick, New Jersey Store, (*id.* ¶ 17), and through online advertisements on websites like Groupon and Living Social, (*id.* ¶ 18; *see also* Online Advertising). Accordingly, Plaintiff is entitled to any fees pursuant to 15 U.S.C. § 1117(a).

However, because Plaintiff has not submitted any invoices or billing records, the Court declines to grant attorneys' fees, costs, or disbursements at this time. *See, e.g.*, *Howard*, 2014 WL

3925536, at *9 (holding that "[w]hile Plaintiff has requested specific figures representing attorney's fees and costs, Plaintiff has not yet submitted proof of these amounts . . . . The amount of fees and costs will be determined upon an application and accompanying affidavit of counsel"); *E.A. Sween Co.*, 19 F. Supp. 3d at 578 (finding willful infringement but requiring a submission of proofs from plaintiff's counsel before awarding attorneys' fees and costs); *Piquante*, 2009 WL 1687484, at *6 ("warrant[ing] an award of attorney's fees upon detailed proof submitted to th[e] Court at a damages hearing"). Accordingly, Plaintiff's request for costs and disbursements is denied without prejudice.

## VI.  CONCLUSION

Accordingly, IT IS on this 29th day of September 2015,

**ORDERED** that Plaintiff Fruit Flowers's motion for default judgment, (D.E. No. 8), against Defendants Jammala, LLC. and Munther Daramneh is GRANTED; and it is further

**ORDERED** that Defendants, their relatives, subsidiaries, affiliates, officers, including but not limited to, agents, distributors, retailers, servants, employees, attorneys, and those in active concert or participation with them, are hereby permanently enjoined from manufacturing, distributing, shipping, advertising, marketing, promoting, transferring, selling, or offering to sell any products using the Fruit Flowers Marks or any trademarks that are confusingly similar thereto; and it is further

**ORDERED** that Defendants, their relatives, subsidiaries, affiliates, officers, including but not limited to, agents, distributors, retailers, servants, employees, attorneys, and those in active concert or participation with them, who receive actual notice of this order by personal service or otherwise, are ordered to within fifteen (15) days after entry of this Permanent Injunction to file with this Court, and serve upon Plaintiff's counsel within thirty (30) days, a written report under

oath, setting forth in detail the manner and form in which they have complied with the injunction; and it is further

**ORDERED** that Plaintiff shall submit supporting documents and a separate application for reasonable attorneys' fees, costs and disbursements within 14 days of the date of this Opinion and Order.

**SO ORDERED.**

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**